Floyd CATES, Movant-Appellant,

v.

STATE of Missouri, Respondent.

No. 9651.

Missouri Court of Appeals,
Springfield District.

Dec. 2, 1974.

Ted M. Henson, Jr., Poplar Bluff, for movant-appellant.

John C. Danforth, Atty. Gen., Clarence Thomas, Asst. Atty. Gen., Jefferson City, for respondent.

Before HOGAN, C. J., and TITUS, BILLINGS and FLANIGAN, JJ.

PER CURIAM.

In this postconviction proceeding under Rule 27.26 [1] Floyd Cates (appellant) sought to vacate a sentence of eight years imprisonment imposed upon his plea of guilty to a charge of stealing, in violation of § 560.-156. After examining the records and files in the cause the trial court denied Cates' motion to vacate without conducting an evidentiary hearing, explicitly finding that every allegation of the motion was shown by the record to be without a basis in fact. Cates appeals. The sole point briefed and argued is that the trial court erred in denying the motion without an evidentiary hearing.

As grounds for postconviction relief, Cates alleged: a) that he had been "deprived of due process . . . for the reason that his plea . . . was not intelligently and understandingly made because said plea was induced upon a promise that [appellant] would only receive a four (4) year term"; b) that he had been "deprived of due process . . . [and] his plea of guilty . . . was not intelligently and understandingly made because . . . the [trial] Court failed to advise him as to the range of punishment that could be imposed thereunder"; and c) that

1. References to statutes and rules are to RSMo 1969, V.A.M.S., and V.A.M.R.

he was deprived of due process and his plea of guilty was involuntary because he was without counsel and was not advised of his right to counsel at his preliminary hearing. In "factual" support of his first ground, Cates alleged that immediately prior to the entry of his plea, he was told by his counsel and believed he would receive a four-year sentence.

The files and records considered by the trial court are before us as exhibits. They consist of 1) the examining magistrate's transcript, certified to the trial court as required by Rule 23.11, and 2) a verbatim transcript of the proceedings had in connection with the plea of guilty, as required by our Supreme Court's order of February 22, 1972, supplementing Rule 25.04. The examining magistrate's transcript recites and shows on its face that on April 12, 1973, appellant was charged with feloniously stealing an automobile in Butler County. On April 13, appellant was taken before the magistrate and the written complaint was read to him. His preliminary examination was set for April 19, 1973, at which time he appeared before the examining magistrate and announced that he was indigent, "whereupon it [was] ordered by the Court that William C. Batson, Jr., be appointed as counselor." The preliminary examination was then adjourned to April 25. On April 25, the appellant appeared in person and by attorney and waived preliminary examination.

The verbatim transcript of the proceedings had in connection with the plea of guilty recites and shows on its face that on May 8, 1973, Cates appeared in person and by attorney in the Circuit Court of Butler County. The information filed was read to him. The trial judge then requested that appellant defer response to the charge and advised him: 1) that he was entitled to a jury trial if he wished to have one; 2) that he had a right to waive a trial by jury and elect to try his case to the court; 3) that he had a right to confront witnesses appearing against him and to have those witnesses cross-examined under oath by his attorney; 4) that he had a right to remain silent in order to avoid self-incrimination, and if he chose to exercise that right the court would enter a plea of not guilty and afford him a jury trial; 5) that upon trial to a jury the burden of proof would be upon the State and the State would be required to prove appellant's guilt beyond a reasonable doubt because appellant was presumed to be innocent; 6) that a jury might find appellant not guilty, in which case no punishment would be fixed; 7) that upon trial or plea of guilty appellant might be punished by: a) imprisonment for a term of not less than two nor more than ten years; b) imprisonment in the county jail for not more than one year; c) a fine not exceeding $1,000, or d) both such fine and imprisonment. Appellant was then asked if he understood the charge against him. His answer was, "Yes, sir."

The court then asked if the appellant understood the various rights outlined to him. He answered affirmatively. The trial court asked the appellant, "Do you have any questions at all concerning any of these three matters we have discussed?" Appellant answered, "No, sir." The trial court then addressed the prosecuting attorney, who stated he was ready to prove the State's case and would recommend a sentence of four years.

The trial court then inquired into the appellant's education, health and background. Cates was 28 years of age, had had a grammar school education and had finished high school "in the penitentiary". Appellant had been married but was divorced, and stated that he didn't "guess" he had any mental or physical problems. Cates said he was "now serving time already in another State", and being asked where, responded, "Tennessee ten years." The court asked if appellant understood that any Missouri sentence would be served after the Tennessee sentence was finished, and further if he understood a conviction might be a basis for revocation of parole or probation on some other sentence. Appellant answered, "Yes, sir."

Three particular inquiries made by the trial court are of particular relevance here, and we quote them verbatim:

"Q. Have you been satisfied with [your attorney's] representation of you?

A. Yes, sir, I am.

* * * * * *

Q. Has anybody promised you anything or threatened you in any way to get you to plead guilty?

A. No, sir. I am guilty of the charge so I am pleading guilty and that is it.

* * * * * *

Q. Did you understand when you entered your plea of guilty that the matter of fixing your punishment was entirely up to this Court and nobody else had anything to say about that?

A. Yes, sir, I did.

Q. Did you understand that the Prosecutor's recommendation was a recommendation and that the Court is not bound by it?

A. Yes, sir."

The trial court also inquired into the factual basis for appellant's plea of guilty. It was developed that Cates had been sentenced in Tennessee to a term of nine to 35 years, for, in his words, "[f]elonious [a]ssault upon a police officer and grand larceny, and escape and so forth and a few other things." Cates had "got [his time] down to ten years now in the State of Tennessee." The sheriff gave as his understanding that Cates had been given leave from the Tennessee State Penitentiary, and had failed to return. Instead, he had come to Butler County, had stolen a truck and had fled to Osceola, Arkansas. Cates was asked: "Is that true, sir?" He answered, "Yes, sir." Such, substantially, is the record which the trial court had before it.

As indicated, appellant's sole point here is that the trial court should have granted him an evidentiary hearing upon his motion. In support of this contention, he has cited us to paragraph (e) of Rule 27.26, which in material part reads:

"Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, a prompt hearing thereon shall be held. . . . This hearing shall be an evidentiary hearing if issues of fact are raised in the motion, and if the allegations thereof directly contradict the verity of records of the court, that issue shall be determined in the evidentiary hearing."

The appellant also cites State v. Garner, 412 S.W.2d 155 (Mo.1967), and Rush v. State, 439 S.W.2d 504 (Mo.1969); both these cases hold that an evidentiary hearing is required in a postconviction proceeding even though the allegations of the motion to vacate flatly contradict the recitations of the record. The language of Rule 27.26, literally followed, seems to require such a result.

Nevertheless, the law concerning postconviction proceedings to vacate pleas of guilty has undergone considerable change in the last few years, and our Supreme Court's application of Rule 27.26 to such proceedings has tended to reflect the fluid state of the law rather than the literal requirements of the rule. In Flood v. State, 476 S.W.2d 529, 533–534[1][2] (Mo.1972), our Supreme Court rejected the suggestion that Rule 25.04 be construed to require the same direct and explicit inquiries as are required by Fed.R.Crim.P. 11. Nevertheless the court noted the desirability of making a direct inquiry of a criminal defendant before accepting a plea of guilty and further noted that our criminal rules might usefully be amended to require a verbatim transcript of proceedings had in connection with a plea of guilty. Flood v. State, supra, 476 S.W.2d at 533–534. By rule promulgated February 22, 1972, our Supreme

Court required trial courts to record and transcribe the proceedings had in connection with a plea of guilty when the sentence imposed requires imprisonment, and further required that the transcript be made a part of the permanent record in the case. In a concurring opinion filed in *Flood,* supra, 476 S.W.2d at 535–537, and in the first *Colbert* case, Colbert v. State, 486 S.W.2d 219 (Mo.1972), Judge Donnelly suggested a mode of inquiry into the voluntariness of a plea of guilty, noting that the procedure suggested would probably insulate the guilty plea against collateral attack. The procedure suggested in *Flood,* supra, in effect implements the ABA Standards, Pleas of Guilty, §§ 1.4, 1.5 and 1.6 (Approved Draft, 1968), as restated and approved in the ABA Standards, Compilation, § 4.2, pp. 173–174 (1974). See also United States v. Cody, 438 F.2d 287, app. 289–290 (8th Cir. 1971).

■ Our Supreme Court has never held that there is any prescribed procedure which must be followed to determine whether or not a plea of guilty is voluntarily made with understanding of the nature of the charge, as required by Rule 25.04, nor that making the inquiries suggested in *Flood* renders the guilty plea *immune* to collateral attack. Nevertheless a review of the cases decided since the first *Colbert* case justifies the conclusion that if the transcript of the proceedings had in connection with a plea of guilty reflects that the trial court followed the *Flood* procedure, compliance with Rule 25.04 is usually established, and no evidentiary hearing is required when the allegations of the motion for postconviction relief are refuted by the record, unless the petitioner pleads facts effective to avoid the record recitations. Smith v. State, 513 S.W.2d 407, 409–411 (Mo. banc 1974); Hogshooter v. State, 514 S.W.2d 109, 111–113 (Mo.App. 1974).

■ In this case, appellant's allegation that he had no legal counsel at his preliminary hearing is conclusively negated by the examining magistrate's transcript. His allegation that his plea was induced by reliance upon a promise that he would receive only a four-year sentence is refuted by the transcript of the proceedings had in connection with the plea of guilty, as is his assertion that the trial court failed to advise him as to the range of punishment which could be imposed. The trial court made specific findings of fact to the effect that all allegations of the motion were conclusively refuted by the record. No facts were pleaded which would tend to avoid the recitations of the record. No evidentiary hearing was required, the judgment entered is not clearly erroneous, and it is therefore affirmed.

All of the Judges concur.